Good morning, Your Honors. Good morning. May it please the Court. Mel Crawford on behalf of the appellant, Julie Neumiller. The Court asked two questions. Whether Ms. Neumiller's trimester bonus was properly treated as monthly earnings, and, I think, if so, whether it should be prorated over multiple months. I think the answer to both questions begins and ends with the plain language of the contract here. And in approaching the contract, every word must be given meaning. Monthly earnings, the word monthly has to mean something there. A trimester bonus is not monthly earnings. That is the first reason. The second reason, which I think actually is more important, is that the drafters here, and these are sophisticated drafters, use the word bonus 12 times in this policy. The drafters were very familiar with the Edward Jones, the employer's compensation system, and they identified four types of pre-disability earnings, four different types to suit four different types of employees with different tenure and different rank within the company. Three of those four definitions, they used the word bonus, they included bonus in pre-disability earnings, and in one they did not. Elsewhere in the policy, and I think this is at pages 81 to 82 of the record, they identified by name three different kinds of bonuses, incentive bonuses, annual bonuses, and milestone bonuses. But so on this second theory of yours, a bonus could never be earnings, right? I mean, you don't need that to win because it seems to me that the narrower issue is whether this bonus, which was called a trimester bonus, should have been allocated across several months or whether it was. . . And was it in fact allocated to just one month? That is correct, Your Honor. Okay. That is correct. And I think we have to, again, you're backing up, consider all of the words in the policy. Current monthly earnings refers to monthly earnings, and a trimester bonus is not monthly earnings, first point. But second point, backing up the arguments set forth in the briefing, that if they intended, if the sophisticated drafter meant to include bonuses in current monthly earnings, they certainly knew how to use the word and to put it there, but they did not do so. Is the earnings assessed based on when the earnings were accrued or when the payment was actually made to your client? We don't know that, Your Honor. And here's what I mean by that. The trimester bonus, we don't know whether that was given because Edward Jones had a particularly robust six-month period just before that, whether it had to do with something that Ms. Neumiller herself had done. The record doesn't reflect this, many months earlier or when it had been done. But let me turn to the second question, though. If we're going to include a bonus there, and then the word bonus is specifically defined. Pardon me, Mr. Crawford. I don't know if I got the answer to Judge Bress's question. Yes, Judge Bress. Your client is a cash basis taxpayer, right? Yes, she is, Your Honor. So she recognizes earnings for tax purposes when she gets paid those earnings, not when they're accrued to her, correct? That is correct. So why can't you argue that the trimester bonus was all in one month because it was paid in cash in one month? Well, I think if we wanted to use that approach, Your Honor, then it would have been appropriate to define current monthly earnings as, you know, what's reflected on your pay stub for that month. But it isn't the expression that was used, and it was qualified by the word monthly. And I'd like to proceed, if I may, Your Honor, to the prorating question. Which contract do you point to to rule out the suggestion I just made? That it should be earnings because she received it in that month. Right. Well, I guess that, yeah, I could see it. But here's, I think I do see this, Judge Bail. What if the way it operated was, you know, every three months she was paid, you know, she was simply paid for the, you know, month January, February, and March, but those payments were made only in March? Well, we wouldn't say that those were her March earnings. Or if the payroll system failed in the month of February and they had to do a recalculation and – Your position is that she earned them over three months and they should be considered earnings over three months. No, Your Honor, quite different. And let me explain why. The language of the contract is earnings, not cash received. Here's why, Your Honor. If we're going to pull the word bonus, as Hartford argues, if we're going to pull the word bonus from pre-disability earnings and include it in current monthly earnings, it is a defined term in the policy. And I'd like to read that definition because I think these words are so important. Bonuses means the monthly average of monetary bonuses, parentheses, including new account bonus, milestone bonus, and all other bonuses, close parentheses, you receive from your employer over the 24-month period immediately prior to the last day you were actively at work before you became disabled. Now, that definition, as we point out in the briefing, seems to apply only to bonuses earned before a person became disabled. But let's look at the reasoning behind that. Pre-disability earnings determine what a person's LTD benefit will be. The policy provides that a person's disability benefit will be 60% of their pre-disability earnings. If a person had a large bonus in the month of March and became disabled in the month of April, it would artificially skew the amount of their bonus or the amount of their LTD benefit, their LTD benefit. I'm sorry, go ahead. Yes, so I'd like to get some clarification on this, and I think Judge Bress has been trying to get at this with his earlier questions as well. If we consider the trimester bonus as earnings, but we do not consider them to be monthly earnings because by the name, it seems to imply that it covers a time span that is greater than a month, do you know from the factual record down below how many months that trimester bonus covered? And if prorated, would it have hit the threshold? Yes, I may not have understood Judge Bress's question, and I apologize. It does appear by its name and by looking through the other payroll records that are in the record that it covered a four-month period. If we look back through, these are not in the record before this court, but within the district court record, you can see the pay stubs. Not always, but sometimes at four-month intervals, there was a bonus. This was the largest one ever. And to answer your question, Judge Oda, if it's allocated over simply four months, it puts her about $80 above the threshold still. She would still be $80 above the threshold? She would still be above. But I think if we're going to be, excuse me, I think if bonuses are defined in the policy and they're defined as a 24-month average, and that's done so that LTD benefits are not artificially elevated. Similarly, bonuses, if we're going to include them at all, and I strongly urge that the plain language of the policy is not include bonuses at all in current monthly earnings, but there, too, there should be a symmetry. If we're going to adopt the definition of bonuses or insert them into a current monthly earnings, there, too, they should be averaged over 24 months, so that otherwise the insurance company sort of has it both ways. They can reduce a bonus by average over 24 months to reduce the amount of the LTD benefit, but if a person has a bonus and use it to spike up their earnings, then they're disqualified from benefits altogether, which, by the way, nothing in the policy alerted Ms. Neumiller that if she received this bonus, this one-time bonus, which was unusually large, and I believe it was discretionary, although I don't think that's reflected in the record. I mean, I wish it were, but in any event, I think this is the Dondurant case, which we cited in the briefings. It says, you know, a one-time discretionary bonus should not be considered earnings. At the very least, Your Honors, I think this is open to reasonable minds can differ on whether it should have been included or not, and if we reach that point, then under clear Ninth Circuit authority, it's ambiguous. I don't believe that this is a hypothetical or a speculative ambiguity. I think Ms. Neumiller's interpretation is equally reasonable with the interpretation that Hartford has advanced. I'd like to reserve my remaining time. Thank you, Your Honors. Okay. Good morning, Your Honors. May it please the Court, my name is Sarah Swale, and I am here to represent Hartford Life and Accident Insurance Company. I, too, would like to turn immediately to the question that was posed in advance about whether or not that trimester bonus counts as, first, monthly earnings on the one hand, and then, secondly, I'll talk about whether or not it should be prorated. So it's Hartford's position that the term monthly earnings plainly and unambiguously means all earnings received by the plaintiff in a given month. It doesn't mean earnings earned on a monthly basis, and frankly I think it's important to look at the difference between PDE, predisability earnings, and current monthly earnings. Predisability earnings are taking a look backwards at the time of disability to determine what would be the average monthly amount of their income over the prior year in order to determine their monthly benefit on a going forward basis. Current monthly earnings is a very different calculation by operation that moves forward in time. In other words, you're constantly rolling a new current monthly earnings calculation every single month. It's not a one-time deal. If the appellant had worked only one month instead of three and received a bonus under the trimester bonus plan, would that all be attributable to one month? Again, yes, Your Honor. Even though it was called trimester? Yes, and the reason for that is that there needs to be a simple explanation for monthly earnings in order to do that calculation on a monthly basis. The trimester bonus, I take it, is a bonus based on four months of work? Presumably, but that's not in the record, Your Honor, and that's one of the issues here is that the pay stub only says that it's a trimester bonus. There's nothing that indicates over what time it should be prorated. Right, but if your client had paid that, I mean here it paid it in lump sum, well, one-time payment, if it had paid some of it every month for four months, then I take it the plaintiff here would not have hit the 60% threshold? I actually haven't done that calculation, Your Honor, so I don't know whether or not it would make a difference once you prorate the amount. But what I would say is that monthly earnings means exactly what it says. Right, but doesn't it seem a little odd that Hartford could essentially control whether somebody hits the 60% based on whether it pays a bonus in a lump sum or in installments? That's fair. Let's be clear. We're not talking about whether or not or when Hartford provides the payment, right? It's when any employer provides the payment, and I think that's an important distinction here because we're not just talking about pay stubs from Edward Jones. Current monthly earnings can include earnings from any employer, and for that reason the definition of monthly earnings needs to be broad and general and all-encompassing because there's simply no way, first of all, for Hartford to be able to determine whether a trimester bonus on a pay stub from some third-party entity that they received from the plaintiff, what time period that's meant to cover. If it had been in a look-back position, she'd receive the same bonus. Would it have been prorated over 24 months? Yes, because that is the way the predisability earnings calculation works. It's a backwards-looking 12 months. But current monthly earnings, by necessity, is looking forwards on a month-to-month basis. Your friend on the other side makes the point that we're trying to, the policy seems to be trying to compare those two things and assess how much the disability has affected somebody's income. Why would we have different ways of measuring the bonus pre and post? Well, because there are different kinds of bonuses, and Edward Jones knows exactly what kind of bonuses it has that it's putting into the predisability earnings category. It knows, for example, that it's got trimester bonuses or annual bonuses or what have you, and so it can build a very specific calculation looking back 12 months. There's no realistic way to do that looking forward. And frankly, I think it would be inconsistent if we had a policy that said, well, if it's an Edward Jones bonus, we know that it's over 4 months, so we're going to prorate it. But if it's a trimester bonus from some other entity, we have no way of knowing what it qualifies for, then we won't prorate it over 4 months because there's no way for us to determine the time period. So for consistency purposes and to simplify it, the only way to reasonably look at monthly earnings is to look at it as earnings that were received in a given month. I'd also like to point the court to the Jantos decision, which is actually a decision that plaintiff quite heavily quoted from. And in that case, the court, this wasn't discussed in any of the briefing, but that court happened to also look at this monthly earnings issue. And in that case, the monthly earnings at issue were Schedule K-1 business income. So the plaintiff was actually saying in that case, my Schedule K-1 business income isn't paid monthly. It's actually paid over a long period of time, but it should be included in the calculation of monthly income. And the defendant in that case tried to argue the same thing that appellant is arguing here, that the K-1 business income shouldn't be paid because it wasn't paid on a monthly basis. And looking at similar language about monthly income, the court said, and I think it's instructive to look at this quote, the court agrees with plaintiffs that this appears to be an overly reductive interpretation of monthly as used in the plan. Under defendants? Counsel. Yeah. The pre-disability earnings. Yes. You say that you try to make a distinction. Those are backwards-looking calculations, and the CMEs, the current monthly earnings, those are forward-looking calculations. Correct. However, you believe that bonuses should be included in both pre-disability earnings and current monthly earnings. Is that correct? That's correct. And you believe that 401K earnings should be included in both pre-disability earnings and current monthly earnings, correct? That's correct. And then for a calculation of pre-disability earnings, when there is a bonus in that time period, it's prorated over a 24-month period, correct? It is prorated according to. And that would be, and presumably that would be to prevent a large bonus in any one month being overly representative or determinative of what monthly earnings are when you're trying to set that initial threshold marker. Is that right? Not necessarily. I think it actually can go the other way in the favor of the claimant as well. For example, what if you had a definition for pre-disability earnings that said, it's whatever you learned in your last month before you were disabled, but they had received a large bonus six months earlier? Well, ha, ha, ha, now you don't get to take advantage of that six-month bonus you got. So I actually think it's a more fair representation. And I agree. So that proration over the 24 months provides a more fair representation. And then you do that proration and that calculation so that you can come up with a monthly number for pre-disability earnings so that you can have an apples-to-apples number for current monthly earnings for future purposes, correct? I agree. And so there seems to be, at least from your point of view, a lot of parity in terms of what you think should be happening on the pre-disability earnings side of the column and the current monthly earnings side of the column. So if they should be calculated the same way in terms of including bonuses and including 401K, why shouldn't they be calculated the same way in terms of being prorated on a 24-month basis for PDE as well as for the CMEs? For a couple of reasons. First of all, there's no mention of prorating. PDE is very specific in its definition and explaining exactly how the bonus is going to work. And it's very clear that bonus with a capital is listed in PDE and that that bonus provision applies only to PDE. There's no definition of bonus, admittedly, in the CME. It just says earnings broadly. And there's a good reason for that. The reason is, administratively, it's virtually impossible to make a month-to-month calculation in order to calculate benefits owed and get those benefits out to the claimant. If you have to worry about whether or not you need to be prorating any of the amounts, particularly when those amounts, unlike predisability earnings, which are all from Edward Jones, who knows exactly what kind of bonuses and compensation they're providing, whereas on current monthly earnings, you're not just talking about Edward Jones. You're talking about compensation from anyone, annual bonuses, incentive bonuses, sign-on bonuses, trimester, quarterly, monthly, weekly, commissions that are, you know, earned prior but then paid in a different month. There's no way administratively for Hartford Life to be able to go back and look at and figure out on a month-to-month basis whether or not earnings should actually apply to a different time period than the month they were received in. Can I ask you, though, does Hartford, just for regular wages, and you may go over your time here, and that's fine. We'll keep going until we've exhausted the questions here. But for just regular earnings, non-bonus, does Hartford count the earnings based on the date it's received or during the period in which the money was earned? They do do a calculation because pay periods do specifically pay stubs to the extent they do identify that they're over a particular pay period, like biweekly. They will do a calculation and only apply those wages that apply for the portion of that biweekly period that falls in a given month. Right. That's what it seemed to me from the records. In other words, if you worked for the end of January into February and that was a pay period, if we're calculating your February monthly earnings, we're not looking at the time that you worked in January, even though your pay for January showed up in your bank account in February. Yes, they do that when it is evident from the pay stubs that you can tell that a pay should be split over two months. Right. Trimester bonus doesn't tell you what trimester it needs to be applied to. I don't even know what four months we would apply a trimester bonus to. There's nothing in the record to say is that the four months in the prior year, is that the four months including February, is the four months prior to February. Isn't it a fair assumption from the name of it that it wasn't earned just in one month? Not necessarily. It could be that you hit a trigger in that fourth month and that trigger is what gets you the earnings, but prior to that month you wouldn't have earned anything. Whose burden is it on this point? It would be the burden of the plaintiff, the claimant, to prove that it should be over a different time period. I don't think it should be Hartford's burden to try and look at a very vague description like trimester bonus in a pay stub that's not their pay stub, not even necessarily their policyholder's pay stub. So if the plaintiff had come to you and said, here's how my employer does the trimester bonus, it is a performance bonus based on four months of my work, and they show that to you, would that all be considered as earned in a single month under Hartford's approach? A hypothetical we don't have here, but I do believe that the Hartford would still consider that to be paid within the month, because again, going back to the very simple definition. It wouldn't matter even if the plaintiff had said, my employer has a policy where if over four months, I have a sustained rating over that period, and I have to maintain that rating for four straight months, he would still treat it as received in a single month, and it wouldn't matter that it reflected work from four months. Again, for the simplification of the calculation of current monthly earnings, yes, it would be earnings received in a given month. And if it's received in the month of February, it doesn't matter if it's a trimester bonus or an annual bonus or any other type of bonus. It's just simply that is the definition. It is what it is. It means what it means. Earnings received in a given month. Any further questions from the panel? Thank you, Your Honors. Thank you. Mr. Crawford, I was struck by a point that was made by your learned friend. Is there any evidence in the record that the trimester bonus was actually earned over a trimester? I may be wrong, but a trimester to me means four months, right? There is no evidence to answer your question. I agree a trimester bonus certainly sounds like four months, but nothing in the record indicates what it was for, and importantly, nothing indicates it was based on her performance. Then she could have gotten a trimester bonus for working one month. Hypothetically, I guess, you know, what this goes to me is, excuse me? On who is the burden to remove the hypothesis? That was what I just wanted to say. I wanted to turn to Judge Bress's question about the burden because I think what this begins to illuminate is there is a burden on the drafter of an insurance policy to do so with clarity. Now we hear that Hartford would have problems. How would we calculate this? How would we calculate that? Well, the court's job is not to help a private insurer do its business. The court's job is to enforce the terms of a contract, and if the result of that is that moving forward an insurer is more careful in how it writes and defines its terms, that's the positive benefit. The trimester bonus is nowhere mentioned in the policy. I wanted to make that point. Even though this policy was very much tailored, it was written by Hartford, tailored specifically to Edward Jones. And, again, in my experience, looking at lots of these policies, unusually conversant with different types of employees and different types of compensation. But it does not mention trimester bonus. It doesn't include, well, sorry, one last point I wanted to make about that. Well, if, you know, there's nothing about a trimester bonus, nothing therefore about whether or how they should be prorated or averaged or anything like that. It seems in these circumstances where reasonable minds can differ, the burden was and remains on the drafter to write clearly. And maybe particularly when we're dealing with a disability insurance policy, this is what keeps the wolf from the door for people. In this case, Ms. Newmiller received a bonus. And, again, the record does not show and would not show that it was based on her performance. This essentially came out of the blue. Wonderful thing. The next thing she knew, she had lost her entire disability claim. One last point. We'd like to go over your time, sir, so let me see if we have further questions from the panel. I want to thank you for your argument this morning. I want to thank both counsel for the briefing and argument. And this matter is submitted. Thank you.
judges: BEA, BRESS, Ohta